UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

ALBERT J. FIELDS, JR.

               Plaintiff,           Civil No. 14-778 (NLH/KMW)

v.

                                        **OPINION**

CITY OF SALEM HOUSING
AUTHORITY, et al.,

               Defendants.

_____

**APPEARANCES:**

Albert J. Fields, Jr.
P.O. Box 1052
Salem, New Jersey 08079

     *Plaintiff Pro Se*

**HILLMAN, District Judge:**

Presently before the Court for review pursuant to 28 U.S.C. § 1915(e) is an amended complaint filed by Plaintiff pro se, Albert J. Fields.  Plaintiff previously filed a complaint, which this Court dismissed for failure to comply with the pleading requirements set forth in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 n.8, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) and Ashcroft v. Iqbal, 556 U.S. 662, 684, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).  (Mem. Op. and Order [Doc. No. 2] 6-7, Apr. 14, 2014.)  The Court directed Plaintiff to file an amended complaint "which sets forth facts demonstrating that Plaintiff

has a plausible claim for relief." (Id. at 7.) Plaintiff then filed the amended complaint as directed by the Court. Because Plaintiff is proceeding in forma pauperis, the Court must review the amended complaint and dismiss sua sponte any claim if the Court determines that such claim is "frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." (Id. at 3.)

I.   **BACKGROUND**

Plaintiff brings this action against the City of Salem Housing Authority (hereafter, "SHA"), which he alleges is a "municipal corporation established pursuant to United States housing Act, 42 U.S.C. 1401 et seq. and regulated by the United States Department of Housing and Urban Development, 24 C.F.R. § 900 et seq. and the Public Housing Occupancy, Handbook 7465.1 REV . . . to provide federally subsidized housing for low-income tenants[.]" (Am. Compl. ¶ 2.) Plaintiff also names as defendants two employees of the SHA, Elizabeth Loyle and Francine Dickerson. (Id. ¶¶ 3, 4.)

Plaintiff avers that on July 12, 2010, he entered into a residential lease agreement with the SHA for a one bedroom unit located at 133 Anderson Drive, Salem, New Jersey. (Am. Compl. ¶ 6.) At that time, Plaintiff's rent was $50 per month. (Id.) Plaintiff thereafter became employed and was also enrolled in

2

Salem Community College.  (Id. ¶ 7.)  In April 2011, the SHA performed an interim rent evaluation and increased Plaintiff's rent.  (Id. ¶ 8.)  According to Plaintiff, the SHA required him to pay the rent increase retroactive from October 2010 in $20 installments added to the monthly rental fee.  (Id.)  Plaintiff was unable to pay the rent in June and July of 2011, and as a result the SHA filed a complaint for non-payment of rent.  (Id. ¶ 9.)  Plaintiff contends that in August 2011, he entered into a repayment agreement with the SHA and made all payments pursuant to that agreement.  (Id. ¶ 10.)

In October 2011, however, Plaintiff was purportedly unable to pay his rent and therefore requested a financial hardship exemption.  (Am. Compl. ¶ 11.)  The SHA did not respond to this request until March 9, 2012, denying such request for failure to include documentation defining the hardship.  (Id. ¶ 13.)  In the interim, the SHA, on February 9, 2012, had filed another complaint for non-payment of rent.  (Id. ¶ 12.)  In that action, the court entered a judgment of possession for the SHA in the amount of $2,399.50, which amount was subsequently reduced to $1,972.50.  (Id. ¶ 14.)

In May 2012, the SHA performed another rent evaluation and determined Plaintiff's new rent to be $206 per month.  (Id. ¶

3

15.)  Plaintiff was subsequently incarcerated,[1] which resulted in termination of his employment.  (Id. ¶ 16.)  On June 17, 2012, Plaintiff requested a financial hardship exemption, and Plaintiff was advised on August 17, 2012 that his rent would be reduced to $50 per month.  (Id. ¶¶ 17, 18.)  Nonetheless, on August 23, 2012, the SHA purportedly proceeded with eviction procedures for non-payment of rent, and ultimately obtained a default judgment of possession.  (Id. ¶¶ 19-20.)  Plaintiff appealed that order, and the Superior Court of New Jersey, Appellate Division vacated the default judgment.  (Id. ¶¶ 23, 40.)  The SHA apparently declined to proceed in that eviction action.  (Id. ¶ 40.)

In December 2012, Plaintiff obtained employment as a cable television technician with Prince Telecom LLC, where he worked through April 2013.  (Am. Compl. ¶ 26.)  In May 2013, Plaintiff began collecting unemployment benefits, which were garnished by child support payments.  (Id. ¶ 29.)  In June 2013, the SHA again performed an annual recertification to determine Plaintiff's new rent, this time increasing his rent from $50 per month to $308 per month.  (Id. ¶ 30.)  Plaintiff opposed the rent adjustment in writing, arguing that there should be an

---

[1] The circumstances of Plaintiff's incarceration are the subject of a separate lawsuit which is also pending before the undersigned.

exemption for child support and an "income disregard."  (Id. ¶ 31.)  Despite his obligation to pay $308 per month, Plaintiff paid only $50 rent for June and July 2013.  (Id.)

On August 5, 2013, the SHA advised Plaintiff that given his earnings with Prince Telecom and work study earned while attending Salem Community College, he owed $2,521 as unreported income.  (Id. ¶ 32.)  Such payment was to be made by August 21, 2013.  (Id.)  On September 30, 2013, the SHA then filed a complaint for non-payment of rent seeking $2,521 as unreported income, rent in the amount of $258 for the month of July, and $308 as rent for the months of August, September and October 2013.  (Id. ¶ 35.)  The court entered a judgment of possession for the SHA in the amount of $3,703 and Plaintiff was removed from the property pursuant to a warrant of removal.  (Id. ¶¶ 36, 41.)

Plaintiff now brings this case asserting four causes of action.  In Count One, Plaintiff contends that upon the filing of a request for a financial hardship exemption, the SHA was required under 24 C.F.R. § 5.630 to suspend the rent requirement for a period of ninety days, and its failure to do so constituted a violation of due process.  (Am. Compl. ¶¶ 45, 46.)  Plaintiff seeks a declaration that the SHA's "policy and procedure of filing non-payment of rent complaints after receiving [Plaintiff's] request for hardship exemption, violates

the rights of [Plaintiff] under his lease contract with SHA and to due process under the 14th Amendment to the United States Constitution[,]" as well as $7,000,000 in compensatory damages, costs, and punitive damages. (Id. ¶ 47.)  In Count Two, Plaintiff alleges that when the SHA increased his rent in April 2011 and made such increase retroactive to October 2010, without prior notice, the SHA further violated his due process rights. (Id. ¶¶ 54, 55.)  In Count Three, Plaintiff contends that on two occasions, he requested a financial hardship exemption and, in retaliation, the SHA initiated complaints for non-payment of rent in purported violation of 42 U.S.C. § 1437, 42 U.S.C. § 1986, Plaintiff's right to due process of law, and New Jersey state law. (Id. ¶¶ 57, 58.)  Finally, in Count Four, Plaintiff avers that when his rent was increased in June 2013, Defendants Dickerson and Loyle received a written objection from Plaintiff and should have provided him with an informal hearing. (Id. ¶ 64.)  Their failure to commence a hearing purportedly precluded them, under 24 C.F.R. § 966.58, from filing an eviction action, thus violating Plaintiff's due process rights. (Id.)

## II. <u>JURISDICTION</u>

Because Plaintiff asserts claims for a violation of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983, the Court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

III. **DISCUSSION**

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(2) is identical to the legal standard employed in ruling on 12(b)(6) motions. Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000).  In considering whether a complaint fails to state a claim under Fed. R. Civ. P. 12(b)(6), the Court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff.  Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005); see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008) ("[I]n deciding a motion under Fed. R. Civ. P. 12(b)(6), [a district court is] . . . required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to" the plaintiff).  A pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A district court asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims[.]'"  Twombly, 550 U.S. at 563 n.8, 127 S. Ct. 1955 (quoting Scheuer v. Rhoades, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)); see also Iqbal, 556 U.S. at 684, 129 S. Ct. 1937 ("Our decision in Twombly

expounded the pleading standard for 'all civil actions[.]'")
(citation omitted).  First, under the Twombly/Iqbal standard, a
district court "must accept all of the complaint's well-pleaded
facts as true, but may disregard any legal conclusions." Fowler
v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing
Iqbal, 556 U.S. at 678, 129 S. Ct. 1937).  Second, a district
court "must then determine whether the facts alleged in the
complaint are sufficient to show that the plaintiff has a
'plausible claim for relief.'"  Fowler, 578 F.3d at 211 (citing
Iqbal, 556 U.S. at 679, 129 S. Ct. 1937).

       "[A] complaint must do more than allege the plaintiff's
entitlement to relief." Fowler, 578 F.3d at 211; see also
Phillips, 515 F.3d at 234 ("The Supreme Court's Twombly
formulation of the pleading standard can be summed up thus:
'stating . . . a claim requires a complaint with enough factual
matter (taken as true) to suggest' the required element.  This
'does not impose a probability requirement at the pleading
stage,' but instead 'simply calls for enough facts to raise a
reasonable expectation that discovery will reveal evidence of'
the necessary element.") (citing Twombly, 550 U.S. at 556, 127
S. Ct. 1955).

A.    **Counts One and Two**

The claims against the SHA in Counts One and Two[2] are
asserted pursuant to 42 U.S.C. § 1983.  Section 1983 is not a
source of substantive rights, but provides a vehicle for
vindicating the violation of other federal rights.  <u>Graham v.
Connor</u>, 490 U.S. 386, 393-94, 109 S. Ct. 1865, 104 L. Ed. 2d 443
(1989).  The statute provides, in relevant part as follows:

> Every person who, under color of any
> statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the
> District of Columbia, subjects, or causes to
> be subjected, any citizen of the United
> States or other person within the
> jurisdiction thereof to the deprivation of
> any rights, privileges, or immunities
> secured by the Constitution and laws, shall
> be liable to the party injured in an action
> at law, suit in equity, or other proper
> proceeding for redress . . . [.]

42 U.S.C. § 1983.  Therefore, to state a claim for relief under
§ 1983, a plaintiff must allege, first, the violation of a right
secured by the Constitution or laws of the United States and,
second, that the alleged deprivation was committed or caused by

---

[2] Plaintiff does not specifically refer to Section 1983 in Count
Two, but rather brings a claim pursuant to the Due Process
Clause of the Fourteenth Amendment.  To seek relief under the
United States Constitution, a plaintiff must utilize the vehicle
of a claim under 42 U.S.C. § 1983 and may not assert claims for
relief under the United States Constitution directly.  <u>Morse v.
Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906-07 (3d Cir. 1997).
Although Plaintiff does not directly cite Section 1983 in Count
Two, the Court construes the amended complaint as asserting a
claim pursuant to this statute.

a person acting under color of state law.  West v. Atkins, 487
U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988); Piecknick
v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

    Municipalities and other local government units are among
those "persons" to which § 1983 liability applies.  Monell v.
New York City Dep't of Social Services, 436 U.S. 658, 690, 98 S.
Ct. 2018, 56 L. Ed. 2d 611 (1978).  The SHA, as a public housing
authority and municipal corporation, is a "person" for purposes
of Section 1983.  Solomon v. Phila. Hous. Auth., 143 F. App'x
447, 456 n.14 (3d Cir. 2005) (holding that Philadelphia Housing
Authority is "person" for purposes of Section 1983).  A
municipality, however, cannot be held liable for the actions of
its employees based solely on the doctrine of respondeat
superior.  Monell, 436 U.S. at 691-95, 98 S. Ct. 2018; Bielevicz
v. Dubinon, 915 F.2d 845, 849-50 (3d Cir. 1990).  In order to
successfully state a claim for municipal liability, a plaintiff
must allege that the employees' actions were pursuant to a
policy or custom of the municipality itself.  Monell, 436 U.S.
at 694, 98 S. Ct. 2018; Watson v. Abington, 478 F.3d 144, 155
(3d Cir. 2007).

    To show the existence of a policy or custom under Monell, a
plaintiff must allege that the municipality acted or failed to
act in any one of three ways.  First, the municipality may have
adopted an official policy that deprives citizens of their

10

constitutional rights.  Monell, 436 U.S. at 694, 98 S. Ct. 2018.
Second, the municipality may have tolerated or adopted an
unofficial custom that resulted in the unlawful stripping of
constitutional rights.  Natale v. Camden Cnty. Corr. Facility,
318 F.3d 575, 584-85 (3d Cir. 2003).  Third, the municipality
may have failed to "train, supervise, or discipline" its
employees so as to prevent them from unlawfully depriving
citizens of their constitutional rights.  City of Canton v.
Harris, 489 U.S. 378, 380, 109 S. Ct. 1197, 103 L. Ed. 2d 412
(1989).

Here, Plaintiff does not sufficiently allege facts to state
a claim against the SHA under a theory of municipal liability.
Count Two contains no allegations of a "policy or practice" as
required to maintain an action against the SHA under Monell.  As
such, Count Two fails to state a claim against the SHA upon
which relief could be granted and will be dismissed without
prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

As to Count One, while it refers to a "policy and practice
of filing non-payment of rent complaints after [Plaintiff]
requested a financial hardship exemption," there are no factual
averments to support this assertion.  Plaintiff does not
specifically allege any facts to support his conclusion that the
SHA affirmatively adopted an official policy that non-payment of
rent complaints should be filed within ninety days

notwithstanding a request for a financial hardship exemption. For example, he does not aver that a decisionmaker with final authority to make municipal policy issued any official proclamation, policy, or edict to proceed with non-payment of rent complaints in the face of hardship exemption requests.  See McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009).  Nor does the complaint contain any factual averments concerning a failure to properly train, supervise or discipline SHA employees so as to prevent them from depriving individuals of their constitutional rights.

The sole factual basis for Plaintiff's "policy and practice" allegation is that he requested a financial hardship exemption on two occasions but the SHA nonetheless proceeded with non-payment of rent complaints.  These two isolated instances of purported wrongdoing do not support the conclusion that the "'practices of state officials [are] so permanent and well-settled' as to virtually constitute law." Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 2009) (internal citations omitted).  Furthermore, Plaintiff does not identify a specific decisionmaker or other state official responsible for the alleged policy or custom, nor does he plead that a municipal decisionmaker had any knowledge that non-payment of rent complaints were being filed despite the existence of a financial hardship request.  See McTernan, 564 F.3d at 658–59.  Hence, the

allegations supporting Count One are deficient, and this count is also subject to dismissal without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**B.   Count Three**

In Count Three, Plaintiff alleges that in retaliation for filing a financial hardship exemption, the SHA initiated proceedings for non-payment of rent.  (Am. Compl. ¶ 57.) Plaintiff brings this claim pursuant to 42 U.S.C. § 1437, 42 U.S.C. § 1983, and 42 U.S.C. § 1986, as well as New Jersey state law.  (Id. ¶ 58.)

Plaintiff's federal claims are subject to dismissal. Plaintiff does not allege that the SHA employed a "policy and practice" that denied Plaintiff of his constitutional rights. Therefore, under Monell Count Three fails to state a Section 1983 claim upon which relief could be granted.  This claim will be dismissed without prejudice.  Plaintiff's claim in Count Three for an alleged violation of 42 U.S.C. § 1986 will also be dismissed without prejudice.  A prerequisite of a claim under Section 1986 is a claim under Section 1985, see Robison v. Canterbury Village, Inc., 848 F.2d 424, 431 n.10 (3d Cir. 1988) ("no claim can be maintained under section 1986 unless a cause of action has been established under section 1985."), and Plaintiff here does not allege a violation of 42 U.S.C. § 1985. Plaintiff's claim under 42 U.S.C. § 1437 will be dismissed with

prejudice because this statute does not create a private right
of action.  See Chavis v. Bush, 305 F. App'x 11, 12 (3d Cir.
2008).

     With respect to Plaintiff's state law claim, the Court will
dismiss the claim with prejudice in part and without prejudice
in part.  New Jersey law provides for actions against a landlord
who "institute[s] any action against a tenant to recover
possession of premises, whether by summary dispossess
proceedings, civil action for the possession of land, or
otherwise . . . [a]s a reprisal for the tenant's efforts to
secure or enforce any rights under the lease or contract, or
under the laws of the State of New Jersey or its governmental
subdivisions, or of the United States[.]"  N.J. Stat. Ann. §
2A:42-10.10.  However, because the landlord in this case is a
public entity, Plaintiff was required to timely file a tort
claims notice before instituting an action against the SHA.  See
N.J. Stat. Ann. § 59:8-3.

     Plaintiff's retaliatory eviction claim is based on two
eviction proceedings initiated by the SHA -- one on February 9,
2012, and one on August 23, 2012.  (Am. Compl. ¶¶ 12, 19.)  It
appears that Plaintiff already raised a claim for retaliatory
eviction concerning the August 23, 2012 proceeding in a case he
filed in the Superior Court of New Jersey, Special Civil Part.
(Id. ¶ 23.)  This claim was dismissed with prejudice based on

14

Plaintiff's failure to file a tort claims notice.  (Id. ¶ 28.)
Plaintiff cannot raise here a claim that was already dismissed
with prejudice based on his failure to file a tort claims
notice, and the claim in Count Three for retaliatory eviction
predicated upon the August 23, 2012 eviction proceeding will
therefore be dismissed with prejudice.  As to the February 9,
2012 eviction proceeding, Plaintiff does not allege that he
filed the requisite tort claims notice for this purported
wrongdoing.  To the extent Count Three is based on the SHA's
retaliatory filing of a complaint in February 2012, the claim
will be dismissed, without prejudice to Plaintiff's right to
file an amended complaint demonstrating that a tort claims
notice was timely filed.

    **C.   Count Four**

    Finally, in Count Four, Plaintiff brings claims against two
individual employees of the SHA -- Defendants Dickerson and
Loyle -- based upon their purported failure to follow the
appropriate grievance procedures before seeking to evict
Plaintiff from his residence.  Under the applicable regulation,
24 C.F.R. § 966.54, a tenant may present a grievance to the
public housing agency so that the grievance may be discussed
informally and settled without a hearing.  If the tenant is not
satisfied, he may then submit a request for a hearing to the
public housing authority and must be afforded a grievance

hearing by an impartial person or persons.  24 C.F.R. § 966.55.
The United States Court of Appeals for the Third Circuit has
concluded that a public housing tenant may bring a § 1983 action
to enforce his right to the grievance procedures under the
United States Housing Act and its accompanying regulations.
Farley v. Philadelphia Housing Auth., 102 F.3d 697, 704 (3d Cir.
1996).

Plaintiff contends in Count Four that he submitted a
written grievance to Defendants Dickerson and Loyle concerning
an increase in his rent from $50 to $308 per month, but they
failed to provide him with an informal hearing and instead
commenced eviction proceedings.  The Court finds these
allegations sufficient, at this time, to pass sua sponte
screening.  Accordingly, Plaintiff's claims against Defendants
Loyle and Dickerson will be permitted to proceed at this time.

IV. **CONCLUSION**

For the reasons set forth above, the claims against the
SHA, as set forth in Counts One through Three of the amended
complaint, will be dismissed.  The Court will allow Plaintiff
one final opportunity to amend the complaint to assert claims
against the SHA with respect to those claims that are dismissed
without prejudice.  The Section 1983 claim against Defendants
Loyle and Dickerson, as set forth in Count Four, will be
permitted to proceed past sua sponte screening.   Within thirty

16

days, Plaintiff must either file a proposed amended complaint consistent with this Opinion, or advise the Court by letter that he will not seek to amend the complaint and instead will proceed only on the claims in Count Four against Defendants Loyle and Dickerson.

An Order consistent with this Opinion will be entered.


                                    s/ Noel L. Hillman
                                    NOEL L. HILLMAN, U.S.D.J.

Dated: July 10, 2015

At Camden, New Jersey

17